IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CR. NO.:2:07 cr 286 MHT - CSC |
| | ) | |
| **JOSEPH SCOTT HOLCOMB** | ) | |

## MOTION TO SUPPRESS AND CITATIONS OF AUTHORITY

**COMES NOW**, the Defendant, Joseph Holcomb, by and through undersigned counsel and, pursuant to the Fourth and Fifth Amendments to the United States Constitution, moves this Court for an Order suppressing all evidence and statements seized as a result of the stop, search and seizure of the blue and silver Ford pickup truck driven by Joseph Holcomb on May 31, 2007.

The evidence due to be suppressed includes but is not limited to: (a) any and all physical evidence seized from the vehicle on May 31, 2007, (b) any and all statements made as a result of the stop, search and seizure of the vehicle, and (c) any other "fruit" of the stop, search and seizure.

### Facts

At a hearing on this motion, the defense would show the following facts ,which will likely not be contested by the government. Joseph Holcomb is a 40 year old Caucasian male. In May of 2007, Mr. Holcomb was in the cattle breeding business and worked part-time as a game bounty hunter. His work as a hunter required Mr. Holcomb to regularly use a rifle. Mr. Holcomb has lived all his life in and around Fort Deposit, Alabama, which has a

population of approximately 1,197 people.[1]

On May 31, 2007, around 8:30 p.m., Mr. Holcomb was headed home from his part-time position as a game bounty hunter and had his rifle in the back seat of the cabin of his truck. As Mr. Holcomb turned onto the street on which he resides, he was flagged down by an approaching vehicle. The area where Mr. Holcomb stopped contains businesses, is zoned as a business district, and is less than one mile from Mr. Holcomb's residence. There was no other appreciable traffic on the street at the time.

Mr. Holcomb pulled to the far right of his lane until both of his right tires were completely against the curb. Another truck, driven by Mr. Holcomb's acquaintance Phillip Norris, pulled beside Mr. Holcomb's vehicle. Mr. Norris' truck blocked the remaining right lane that Mr. Holcomb's vehicle occupied and crossed over the center line into the left lane. There was sufficient room opposite Mr. Norris' truck to allow for the free passage of other vehicles.

Soon after Mr. Holcomb pulled over to speak with Mr. Norris, both vehicles started to drive away. Officer Charlie McKinnon, with the Lowndes County Sheriff's Office, pulled behind Mr. Holcomb's vehicle with his emergency lights activated. Mr. Norris pulled forward in front of Mr. Holcomb and drove away. Officer McKinnon never pursued Mr. Norris' truck for any alleged traffic violation.

After initiating his emergency lights, Officer McKinnon left his patrol car and walked

---

[1] http://www.bestplaces.net/city/Fort_Deposit_AL-50127520000.aspx  According to this source, the population of Fort Deposit has decreased by approximately 5 % since 2000.

over to Mr. Holcomb's truck. Officer McKinnon asked to see Mr. Holcomb's drivers license and inquired about any weapons in the vehicle. In response, Mr. Holcomb informed Officer McKinnon about his work rifle in the back seat. Officer McKinnon ordered Mr. Holcomb out of the vehicle.

Officer McKinnon then asked about contraband in the truck and asked to search the vehicle. Mr. Holcomb refused consent to search. Officer McKinnon removed Mr. Holcomb's work rifle from the back seat and searched the truck. During the search of the truck, Officer McKinnon allegedly recovered a small amount of marijuana and a pipe with marijuana residue.

On information and belief, Officer McKinnon, or his partner, notified drug task force officer, Agent Campbell, regarding the stop of Mr. Holcomb. Thereafter, Agent Campbell arrived at the site and again searched Mr. Holcomb's truck. The officers confiscated Mr. Holcomb's rifle and the marijuana allegedly found by Offier McKinnon. .

At some point after the search and seizure of the rifle and marijuana allegedly found in the vehicle, Mr. Holcomb was issued a traffic citation for "parked in roadway."[2] Prior to being issued the citation by Officer McKinnon, Mr. Holcomb was not aware, and never

---

[2]This apparently asserted a violation of Ala. Code § 32-5A-136, which states: "Outside of a business and residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practical to stop, park, or so leave such vehicle off the roadway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall e available from a distance of 200 feet in each direction upon such highway . . . ."

3

informed, of the basis for the traffic stop. (Mr. Holcomb allegedly paid the citation on July 13, 2007.)[3]

As the officers were releasing Mr. Holcomb, they instructed him to meet with them on the following morning, to provide information concerning the rifle that was seized. The officers told Mr. Holcomb they only wanted information on where he got the gun from, and implied there was no intent to prosecute him for the firearm.

The morning after the stop, June 1, 2007, Mr. Holcomb met with Agent Campbell. Allegedly, after being read the Miranda Warning, Mr. Holcomb signed a waiver of his rights and gave a signed statement. In that statement, Mr. Holcomb allegedly admitted using marijuana, to purchasing the rifle from New York, and having it shipped to Alabama.

According to discovery presented to the defense, the government apparently alleges that Mr. Holcomb met with law enforcement officers a second time on June 13, 2007, and provided a written statement.

On information and belief, Officer McKinnon has an individual, personal bias against Mr. Holcomb and stopped Mr. Holcomb with malicious intent.

---

[3] In *Dunham v. Pannell*, 263 F. 2d 725, 729 (5th Cir. 1959), the court held that payment of a "traffic ticket was inadmissible, as a legal plea of guilty, to prove the judgment of conviction or to establish the truth of the facts recited in the traffic charge....We merely hold it inadmissible because not based upon a proper plea of guilty." "Logic and common sense dictate that a decision to pay a traffic fine should not be extended beyond the context in which it occurs. Paying a ticket is akin to a plea of nolo contendere which admits the facts alleged, but only for purposes of the case in which the plea is made. Such a plea cannot be used in a later civil or criminal trial. The decision to pay a traffic citation is analogous to making an offer of compromise. Such an offer cannot be considered an admission." *LePage v. Bumila*, 552 N.E. 2d 80, 83 (Massachusetts, 1990).

**Issues Presented**

1. Mr. Holcomb's rights under the Fourth Amendment were violated by his illegal stop, detention and arrest.

2. The detention, arrest, search and questioning of Mr. Holcomb exceeded the necessary and reasonable scope and duration of the alleged traffic purpose of the stop of his vehicle, and were without any other lawful, authorized purpose, in violation of the Fourth and Fifth Amendments to the Constitution.

3. The questioning of Mr. Holcomb, including the interrogation made under the guise of seeking non-prosecutorial information, was the fruit of the above violations of the Fourth and Fifth Amendments and also violated his Fifth Amendment right against self-incrimination, his Fifth and Sixth Amendment rights to counsel and to present a defense, and his Fifth and Fourteenth Amendment rights to due process and a fundamentally fair trial.

**Argument**

The warrantless stop, search and seizure of the vehicle driven by Joseph Holcomb was unreasonable and did not fall within any of the exceptions to the warrant requirement. Officer McKinnon lacked the requisite probable cause to stop Mr. Holcomb and his vehicle. Further, the alleged traffic infraction was a pretext to search for evidence. As a result, all evidence seized as a result of the unconstitutional stop, search, and seizure must be suppressed. Additionally, Mr. Holcomb's alleged statements to the police were the fruit of the preceding unlawful stop of the vehicle and his unlawful arrest and were coerced through

the inaccurate implication that prosecution was not being contemplated.

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." Const. Amend IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 88 S.Ct. 507, 514 (1967) (internal citations omitted).

Two of the exceptions are (1) that police officers may stop a vehicle if they observe that vehicle operating in violation of the law; and (2) officers may briefly stop and question an individual when the officer has an reasonable, objective and articulable belief the individual may be engaged in criminal activity. *Terry v. Ohio*, 88 S.Ct. 1868 (1968). Such "reasonable suspicion" may not be based on the officer's hunch, but requires that the police officer be able to point to specific and articulable facts which reasonably warrant the intrusion. *Id*. (citing, *Terry v. Ohio* at 1879); See also, *United States v. Mikell*, 102 F.3d 470, 475 (11th Cir. 1996) (police are required to articulate some objective justification for the stop).

An officer may stop a vehicle for a traffic violation even though his true motivation is to search for contraband as long as the officer has probable cause to initially stop the vehicle. *United States v. Whren*, 517 U.S. 806, 116 S.Ct. 1769 (1996). "Although an officer may conduct a pretextual traffic stop as a means to uncover other criminal activity, the officer

must reasonably suspect a traffic law violation." *United States v. King*, 244 F. 3d 736, 738 (9th Cir. 2001). "An officer's mistake of law, or mistake as to the scope of the applicable law, cannot form the basis for reasonable suspicion to initiate a traffic stop." *Id* at 739. "A suspicion based on such a mistaken view of the law cannot be the reasonable suspicion required for the Fourth Amendment, because the 'legal justification [for a traffic stop] must be objectively grounded.'" *United States v. Twilley*, 222 F. 3d 1092, 1094 (9th Cir. 2000) "Even a good faith mistake of law by an officer cannot form the basis for reasonable suspicion, because 'there is no good-faith exception to the exclusionary rule for police who do not act in accordance with governing law.'" *King,* 244 F. 3d at 739.

In *United States v. Hernandez,* 55 F.3d 443 (9th Cir. 1995), the federal court confronted a factual situation very similar to the present case. The officer recognized the defendant, conducted a traffic stop for "parked in roadway," and cited the defendant for violation of the Montana code. 55 F. 3d at 446. The officer searched the defendant's vehicle and found a large amount of cash, 15 pounds of marijuana and a loaded handgun.

The court in *Hernandez* ruled that "by its very terms the provision under which the defendant was cited for parked in roadway only applies to vehicles parked on a highway outside of a business or residence district. It does not, in other words, apply to vehicles parked within a business or residence district." *Id* at 446. The court held the stop was a pretextual stop, in violation of the traffic code, and ruled that the evidence seized as a result of the stop must be suppressed.

In *United States v. Goodwin*, 202 F. 3d 270, 202 F 3d 270 (Table) (6th Cir. 2000), an officer noticed two trucks, at night, parked side by side on a gravel road in a new subdivision where houses were being built; an area that had fallen victim to recent thefts and vandalism. *Id*. The officer allegedly stopped the defendant's vehicle for an alleged "blocking a public roadway" violation. *Id*. However, the officer failed to issue the defendant a citation for this alleged infraction and was not able to identify any local ordinance or state statute to support his contention that defendant was engaged in a traffic violation at the time of the stop. *Id*. The officer searched the defendant's truck, without consent or warrant, and found a brown paper bag containing drugs and drug paraphernalia. *Id*. The court held that the initial stop of the defendant and the subsequent detention and search and seizure were illegal, and suppressed the resulting seizures. *Id*. at 3.

In the present case, the plain language of Ala. Code § 32-5A-136 shows that Mr. Holcomb was not in violation of the traffic code prohibition of "parked in roadway." No other justification existed for the stop. Thus, the stop was illegal and in violation of Mr. Holcomb's federal constitutional rights, and all items and information obtained as a result of the stop must be suppressed.

In *United States v. Pruitt*, 174 F. 3d 1215 (11th Cir. 1999), the Eleventh Circuit addressed the implication of the Fourth Amendment in a routine traffic stop and the application of the *Terry* standard. In *Pruitt*, the defendant was stopped for a traffic violation and asked to accompany the officer to his vehicle. While in the vehicle the officer asked the

8

defendant questions unrelated to traffic citation. The officer then questioned the passengers on matters unrelated to the traffic violation. Prior to writing the citation, the officer then asked if the defendant had any contraband and whether he could search the vehicle. When the defendant stated he had no contraband and would not allow the search, the officer ordered K-9 inspection of the vehicle. Narcotics were subsequently found. The Eleventh Circuit held that the detention of the defendant and the subsequent search and seizure was illegal. 174 F.3d at 1219.

The Court further found that the questioning during an alleged traffic stop for a driving infraction should be limited to questions regarding the driver's "license, registration and insurance papers." *Id.* at 1220. Unless there is articulable and reasonable suspicion of criminal activity, additional questioning was irrelevant and a violation of *Terry*. *Id.*

As in *Pruitt*, in this case at hand, Mr. Holcomb was stopped for a minor traffic violation, removed from his vehicle and illegally detained by the officer's improper questioning regarding matters unrelated to the alleged violation. As in *Pruitt*, Mr. Holcomb was not presented with his ticket but was instead questioned about guns and contraband inside the vehicle. As in *Pruitt*, despite Mr. Holcomb's refusal to give his consent to search, Officer McKinnon searched his vehicle anyway. As in *Pruitt*, the items and information seized must be suppressed.

**WHEREFORE,** Mr. Holcomb asks this Court to enter an order suppress all evidence (statements and items) seized from the blue and silver Ford pickup truck he was driving on

May 31, 2007, and to prohibit the government from using any information obtained as a result of this stop, including the information gained from all interrogations of Mr. Holcomb and the fruits of the stop and the interrogations.

> Respectfully submitted,
>
> s/Christine A. Freeman
> **CHRISTINE A. FREEMAN**
> **TN BAR NO.: 11892**
> Attorney for Joseph Scott Holcomb
> Federal Defenders
> Middle District of Alabama
> 201 Monroe Street, Suite 407
> Montgomery, AL 36104
> TEL: (334) 834-2099
> FAX: (334) 834-0353
> E-Mail: Christine_Freeman@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Matthew Shepherd, Assistant U. S. Attorney.

> Respectfully submitted,
>
> s/Christine A. Freeman
> **CHRISTINE A. FREEMAN**
> **TN BAR NO.: 11892**
> Attorney for Joseph Scott Holcomb
> Federal Defenders
> Middle District of Alabama
> 201 Monroe Street, Suite 407
> Montgomery, AL 36104
> TEL: (334) 834-2099
> FAX: (334) 834-0353
> E-Mail: Christine_Freeman@fd.org