IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA        )
                                )
        v.                      )       CR. NO. 02:07cr286-MHT-CSC
                                )
JOSEPH SCOTT HOLCOMB            )

RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

Comes now the United States of America, by and through Leura G. Canary, United States

Attorney for the Middle District of Alabama, and hereby requests that this Honorable Court deny

Defendant's Motion to Suppress.  As grounds in support of this Response, the United States sets

forth the following:

FACTS

While on patrol late in the evening of May 31, 2007, Deputies Charlie McKinnon and Tom

Birtley of the Lowndes County Sheriff's Office drove into Fort Deposit, Alabama, heading west on

Rogers Street.  As they approached the intersection of Rogers Street and South Pollard Street, the

deputies observed two vehicles stopped at the intersection.  The two vehicles were on South Pollard

Street, on the south side of Rogers Street.  One vehicle was stopped at the stop sign, with its lights

on, facing north across the intersection.  The other vehicle, a pickup truck, was stopped in the south

bound lane of South Pollard Street, facing south, right next to the vehicle facing north.  The vehicle

facing south did not have its lights on.  The position of both vehicles was such that they blocked

travel on South Pollard Street.  South Pollard Street is a two-lane road that does not have spaces for

parking along it.  The shoulder is narrow, without enough room for a vehicle to park and be

completely out of the road.   The area of Fort Deposit where the vehicles were spotted is in close

proximity to areas known for drug trafficking.

Deputies McKinnon and Birtley passed the stopped vehicles at the intersection. Immediately after they passed, the vehicle facing north, with its lights on, drove off down South Pollard Street away from the intersection. The other vehicle, with its lights off did not immediately drive away. The deputies turned their vehicle around and as they drove back to the intersection, they saw the vehicle with its lights off begin to drive away, without turning on its lights. Deputy McKinnon then initiated his flashing lights. The vehicle immediately pulled over to the side of the road.

After initiating the traffic stop at approximately 11:40 pm, Deputy McKinnon stayed in the patrol car and requested a check of the vehicle's license plate number with his dispatcher. Deputy Birtley walked to the front of the stopped vehicle and began to talk to the defendant, who was the driver and sole occupant of the vehicle. Deputy Birtley asked for identification. Using his flashlight, he could see a rifle in the truck through the window. Deputy Birtley recognized the defendant as someone he had pulled over several months earlier. During that previous traffic stop, Deputy Birtley had discovered marijuana and guns in the defendant's truck. Deputy Birtley asked the defendant if he was in possession of any weapons or drugs and if he could search the vehicle. The defendant stated he had a rifle in the truck and said that Deputy Birtley could search the vehicle. This exchange occurred while Deputy McKinnon was in the patrol car running the check on the license plate. Deputy Birtley then asked the defendant to exit the vehicle. At this time, Deputy McKinnon approached the front of the defendant's truck. Again, Deputy Birtley asked for consent to search the vehicle, which the defendant granted. Deputy McKinnon heard the defendant consent to the search of his vehicle. Deputy McKinnon also issued a ticket to the defendant for being illegally parked in the roadway, in violation of Ala. Code 1975 § 32-5A-136.

2

Deputy Birtley proceeded to search the vehicle after first removing the rifle from the truck. While searching the center console, Deputy Birtley discovered a deer horn pipe and a small container of marijuana. After discovery of the marijuana, Deputies McKinnon and Birtley contacted Agent T.C. Campbell of the 2nd Judicial Circuit Drug Task Force, who responded to the scene, arriving at approximately 11:55 pm. From the time the traffic stop began until the arrival of Agent Campbell, approximately 15 minutes elapsed.

After Agent Campbell arrived on scene, he assumed responsibility for the investigation.[1] He did not arrest the defendant that night but requested that the defendant report to see him the next morning. Agent Campbell did not inform the defendant that he would not be prosecuted, but stated that he did not know what would happen to his case.

The next morning, June 1, 2007, the defendant met with Agent Campbell and ATF Special Agent Sybil Hall-McNeil, who jointly conducted an interview of the defendant. Prior to questioning, the defendant was advised of his *Miranda* rights and signed a form indicating his understanding of those rights. On June 13, 2007, Agent Campbell interviewed the defendant a second time. He again advised him of his rights, using the written rights advisal form. At this interview the defendant signed a typed statement.

<u>ANALYSIS</u>

The defendant moves to suppress the admission of the evidence found in the vehicle, claiming that the evidence was seized in violation of the Fourth Amendment. Specifically, the defendant claims that the initial traffic stop by the police violated the Fourth Amendment

---

[1]The policy of the Lowndes County Sheriff's Office at this time was that deputies on patrol who found narcotics during a traffic stop were to contact the drug task force and turn responsibility for the stop over to the drug task force agents.

because the police lacked probable cause to believe that the defendant had committed a traffic

violation; that their actions during the stop exceeded the permissible scope of the stop; and that

the interviews of the defendant on June 1, 2007, and June 13, 2007, violated the defendant's

Fifth Amendment rights.  The United States opposes this motion and argues that the deputies had

probable cause and reasonable suspicion to conduct the traffic stop; that the deputies did not

exceed the scope of the traffic stop; and that the defendant was fully advised of his rights prior to

being questioned on June 1, 2007, and June 13, 2007.

## I. THE SEARCH OF THE DEFENDANT'S VEHICLE DID NOT VIOLATE THE FOURTH AMENDMENT.

### *a. The police had probable cause to believe the defendant committed a traffic violation and to conduct a traffic stop of the vehicle.*

"As a general matter, the decision to stop an automobile is reasonable where the police

have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517

U.S. 806, 810 (1996); see also United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999).

The issue is whether the officers objectively had probable cause to believe that a traffic offense

had been committed at the time they initiated the traffic stop.

In this case, Lowndes County Sheriff's Office Deputies McKinnon and Birtley observed

the defendant's vehicle at night, with its lights off, parked in the roadway, just past an

intersection.  After making this observation, the deputies had sufficient probable cause to believe

that the defendant was committing a violation of Ala. Code 1975 § 32-5A-136(a) of the Code of

Alabama, which states, "(a) Outside a business or residence district no person shall stop, park or

leave standing any vehicle, whether attended or unattended, upon the roadway when it is

4

practicable to stop, park or so leave such vehicle off the roadway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of 200 feet in each direction upon such highway."  Here, Deputy McKinnon observed a vehicle parked in the roadway at night, without its lights on, providing probable cause to believe that the statute had been violated.  He was then issued a ticket for that violation. The defendant then paid the ticket and admitted guilt on July 13, 2007.  By paying the ticket, the defendant admitted his guilt to the traffic violation, which clearly shows that there was probable cause to believe the defendant had committed the violation.

A consideration of the facts and circumstances shows that even if the payment of the ticket did not show that probable cause existed, the officers still had probable cause to believe a violation occurred.  The defendant argues in his motion that he was not actually committing a violation of Ala. Code 1975 § 32-5A-136 when the deputies observed him because he was parked on the street in a business or residential district, which the defendant argues is excluded from the prohibition on parking in the roadway.  However, even if the defendant was parked in a business district, the second portion of Ala. Code 1975 § 32-5A-136(a) requires "in every event ... a clear view of such stopped vehicle shall be available from a distance of at least 200 feet in each direction upon such highway."  This clause appears to apply "in every event" when vehicles are stopped on the highway, not just when they are stopped outside of a business or residence district.  In this case, the defendant was parked in the lane of traffic at night with his lights off, making it unlikely that his vehicle was visible for at least 200 feet in both directions.

The standard for the officers making a traffic stop is not whether it is clear the driver has committed a traffic violation beyond a reasonable doubt. The question is whether the officer had probable cause. The defendant is correct in arguing that a mistake of law cannot amount to probable cause. United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003). But even if the ticket was mistakenly issued, the officers did not make a mistake of law in this case. It is a factual question whether the vehicle was properly visible for 200 feet and it is a factual question whether the vehicle was stopped in a business district as defined by Alabama law.[2] So the question for the Court, if the statute was not actually violated, is whether the officers acted reasonably. "A traffic stop based on an officer's incorrect, but reasonable assessment of facts, does not violate the Fourth Amendment." Chanthasouxat at 1276. If the officers were mistaken in their belief that the defendant violated Ala. Code 1975 §32-5A-136, their mistakes were reasonable factual mistakes, such as believing that the vehicle was parked in a business district or was not visible for 200 feet. Based on the definition of business district and the visibility requirement, these mistakes would be based on distance calculations made at night, in which officers could reasonably make mistakes. In addition, the fact that the defendant paid the ticket and payment was accepted by the court shows that any mistakes made by the officers were not unreasonable since neither the defendant nor the court realized any mistakes.

---

[2]Ala. Code 1975 §32-1-1.1(6) defines a business district as, "The territory contiguous to and including a highway when within any 600 feet along such highway there are buildings in use for business or industrial purposes, including but not limited to hotels, banks, or office buildings, railroad stations and public buildings which occupy at least 300 feet of frontage on one side or 300 feet collectively on both sides of the highway." That the area is zoned for business does not determine the issue; determination of the location of a business district is based on calculation of the radius from the businesses and the frontage of the businesses on the highway.

The defendant cites to <u>United States v. Hernandez</u>, 55 F.3d 443 (9th Cir. 1995), as an example where the court considered a similar statute. In that case the 9th Circuit Court of Appeals found that no reasonable officer would have found probable cause to believe a traffic violation had occurred because the vehicle was stopped squarely in a business district, "'right next to' several businesses" and the terms of the statute appeared to exclude vehicles stopped in business districts. <u>Id</u>. at 446. There are two important distinctions between this case and Hernandez. First, the Montana statute quoted in the Hernandez decision does not include a clause requiring in every event that there be a clear view of the vehicle for 200 feet. <u>Id.</u> (quoting Mont. Code Ann. § 61-8-353). Second, in this case, the vehicle was not stopped right next to several businesses. As a result, a reasonable officer, seeing a car stopped without its lights on, just past an intersection, near but not right next to businesses, could believe there was probable cause that Ala. Code 1975 § 32-5A-136(a) had been violated.[3]

Further, as the deputies turned their patrol car around they witnessed the defendant's vehicle begin to drive away without its lights on, another traffic violation. Driving at night without headlights on is a violation of Ala. Code 1975 § 32-5-240(a). Having witnessed the vehicle driving without its headlights on, the deputies had probable cause to believe that the defendant had committed a traffic violation and were thus permitted to initiate a traffic stop. Deputy McKinnon did not issue a ticket for driving without lights on, but that is not determinative. The standard is probable cause, so it is not necessary that the officer actually issue a traffic ticket .

---

[3]The defendant also cites to <u>United States v. Goodwin</u>, 202 F.3d 270 (Table) (6th Cir. 2000), but in that case the court found it persuasive that no ticket was issued and the officer could not cite to a statute that had been violated, which is a clear distinction from this case.

7

The sole question for the court to answer in this case is whether the officers who stopped the defendant's vehicle on May 31, 2007, had probable cause to believe that the vehicle had committed a traffic offense.  See Draper v. Reynolds, 369 F.3d 1270, 1275 (11th Cir. 2004) ("Thus, the only question for purposes of examining the constitutionality of Reynolds' stop is: Did Reynolds have probable cause to believe that a traffic violation had occurred?") In this case, based on what Deputy McKinnon and Deputy Birtley witnessed, that the defendant was parked on the roadway in the lane of traffic without lights on and that the defendant drove away at night without his lights on, they acted reasonably and had probable cause to believe that he had committed the traffic offenses of being parked in the roadway and driving at night without lights.

### b. Deputy McKinnon and Deputy Birtley had reasonable suspicion to conduct an investigatory stop of the defendant's vehicle.

Even if Deputy McKinnon and Deputy Birtley did not have probable cause to believe that the defendant had committed a traffic offense, they had reasonable, articulable suspicion sufficient to justify an investigatory traffic stop.  When officers observe facts which create a reasonable, articulable, objective belief that an individual may be involved in illegal activity, they may conduct a limited, investigatory stop of the person or vehicle without obtaining a warrant. See Terry v. Ohio, 392 U.S. 1 (1968).  Terry applies to vehicle stops as well as pedestrians. Court must examine the totality of the circumstances and consider the collective knowledge of the officers involved.  The standard is less than a preponderance of the evidence but "the Fourth Amendment nevertheless requires that the police articulate facts which provide some minimal, objective justification for the stop." United States v. Williams, 876 F.2d 1521, 1523-1524 (11th Cir. 1989) (citations omitted).

8

In this case, Deputy McKinnon and Deputy Birtley had reasonable suspicion to justify an investigatory traffic stop. They observed two vehicles parked at an intersection, one without its headlights on. The vehicles were in an area known for drug trafficking. Based on their experience, the officers believed that vehicles stopped in that manner could be indicative of a drug transaction. After driving through the intersection in their marked sheriff's cruiser, one vehicle drove away and the other remained in the street with its lights off. They observed this incident at night, when a vehicle which wished to avoid detection would leave its lights off. Because of the darkness, the presence of a vehicle parked in the road without its lights on created a hazard for other drivers. Finally, they observed the vehicle attempt to drive away, while leaving its lights off. Such behavior constitutes articulable facts creating reasonable suspicion to believe that the vehicle was involved in criminal activity. These facts provided the officers with more than a "minimal, objective justification for the stop." Id. As a result Deputy McKinnon and Deputy Birtley were authorized to conduct an investigatory stop.

### c. The actions of the officers did not exceed the scope of the traffic stop.

The actions of officers during a traffic stop must be limited to those reasonably necessary to complete the purpose of the stop. If the purpose is to issue a traffic citation, then the stop must be limited in duration and in actions to that which is necessary to process the traffic violation. If the purpose is an investigatory stop, then the officer's actions must be limited to those necessary to determine whether the individual is involved in criminal activity. However, a stop may be prolonged if during the stop the officer develops reasonable suspicion that the individual is involved in other criminal activity. United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir.

2001).  During any traffic stop, an officer is permitted to take reasonable steps to ensure his own safety.  Id. These steps include looking inside the vehicle with a flash light and seizing any weapons in plain view. Id., at 1277-1278.  An officer may also order the occupants to exit the vehicle, Pennsylvania v. Mimms, 434 U.S. 106 (1977), and may conduct a protective search of the immediate area where the occupants had been sitting if he has a reasonable basis for doing so. Michigan v. Long, 463 U.S. 1032 (1983).

Once Deputy McKinnon and Deputy Birtley pulled the defendant over, their actions were all permissible and reasonably related to conducting an investigatory traffic stop and processing a traffic violation.  Deputy McKinnon stayed in the vehicle to conduct a check of the vehicle's license plate, a standard function during any traffic stop.  See Purcell, at 1278 (permitting computer checks of the criminal histories of vehicle occupants during a traffic stop).  Deputy McKinnon then wrote out the traffic citation.  Deputy Birtley approached the vehicle and looked in the defendant's truck.  He observed in plain view a rifle.  Deputy Birtley had also seen the activities of the defendant's truck prior to the stop and was familiar with the area as one in close proximity to drug traffickers.  Finally, when he reached the truck, he recognized the defendant as someone he had pulled over during a traffic stop a few months earlier and found in possession of weapons and drugs.  These facts gave him reasonable suspicion to suspect the defendant was engaged in criminal activity and to ask him about guns and drugs in the vehicle. Id. at 1280. Deputy Birtley was also permitted to ask consent to search the vehicle.  Id. at 1281 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973)).

The defendant consented to the search of his vehicle.  Both Deputy Birtley and Deputy McKinnon heard the defendant give verbal consent to the search.  Alternatively, even if the

defendant did not consent, Deputy Birtley's observation of a weapon in the vehicle, combined with his other observations, gave him a reasonable basis for conducting a protective search of the immediate area where the driver was sitting, which would include the center console where the marijuana was found.  See Michigan v. Long, 463 U.S. 1032 (1983)

Deputy Birtley's observation of the rifle, questioning of the defendant, and request for consent all occurred while Deputy McKinnon was located in the patrol car checking on the license plate, so they did not prolong the stop.  The search of the vehicle also did not take long. Deputy McKinnon contacted the drug task force only after finding the marijuana.  From the beginning of the stop until Agent Campbell's arrival took only approximately 15 minutes, not an unreasonable time for a traffic stop.  See Purcell at 1279 ("Fourteen minutes is not an unreasonable amount of time for a traffic stop."). This case is distinguishable from United States v. Pruitt, 174 F.3d 1215 (11th Cir. 1999), in which officers did not have reasonable suspicion of criminal activity and had to wait over 30 minutes for a drug dog to even arrive. Id. at 1218. See also United States v. Williams, 238 Fed.Appx. 566, 567-568 (11th Cir. 2007) (upholding traffic stop that lasted 37 minutes and citing cases where traffic stops as long as 75 minutes were approved).

The actions of Deputy McKinnon and Deputy Birtley were reasonable in scope and duration for a traffic stop based on a traffic violation and on reasonable suspicion of criminal activity.  They acted reasonably and lawfully searched the defendant's vehicle after obtaining his consent. Therefore, the evidence seized from the vehicle is admissible.

## II.    THE DEFENDANT'S RIGHTS WERE NOT VIOLATED WHEN HE WAS INTERVIEWED ON JUNE 1, 2007, AND JUNE 13, 2007

After the discovery of the marijuana and rifle, the defendant was not arrested immediately on May 31, 2007. Instead he was told by Agent Campbell to report to him the following morning to be interviewed. Agent Campbell did not inform the defendant that he would not be prosecuted but instead indicated that he did not know what would result from the investigation.

On June 1, 2007, the defendant reported to Agent Campbell. Agent Campbell and ATF Special Agent Sybil Hall-McNeil interviewed the defendant. Prior to the interview, Agent Campbell advised the defendant of his rights pursuant to the Fifth Amendment and Miranda v. Arizona, 384 U.S. 436 (1966). The defendant signed a rights advisal form in which he indicated with his initials and his signature that he understood that he had the right to remain silent, that anything he said could be used against him, and that he had the right to an attorney. Only after the defendant signed this form did Agent Campbell and Special Agent Hall-McNeil interview the defendant.

The defendant was interviewed by Agent Campbell a second time on June 13, 2007. Again, Agent Campbell advised the defendant of his rights, and again the defendant signed the form indicating that he understood them. During this interview, the defendant signed a written statement.

When evaluating the voluntariness of a confession, the Court must consider the "totality of the circumstances" to determine if the confession was the result of impermissibly coercive conduct by the police. United States v. Thompson, 422 F.3d 1285, 1295 (11th Cir. 2005). Examples of coercive conduct by the police include "subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." Id. at 1296 (quoting United States v. Mendoza-Cecelia, 963

12

F.2d 1467, 1475 (11th Cir. 1992).  There is no indication that the interrogation was excessively long or exhausting.  In fact, instead of advising the defendant of his rights and interviewing him in the middle of the night on May 31, 2007, when he might be overly drowsy, the defendant was not interviewed until the following morning after he had an opportunity to sleep.  There have been no claim of threats or physical coercion by law enforcement.  Finally, Agent Campbell did not make any promises not to prosecute the defendant and merely stated that he did not know whether the defendant would be prosecuted, which falls far short of constituting a coercive promise of leniency.

The defendant was fully advised of his rights and voluntarily waived them on June 1, 2007, and June 13, 2007, prior to any questioning.  Therefore, his verbal and written statements are admissible.

**WHEREFORE,** for the reasons described above, the United States respectfully requests that the Defendant's Motion to Suppress be DENIED.

Respectfully submitted this 14th day of February, 2008.

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Matthew W. Shepherd
MATTHEW W. SHEPHERD
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
(334) 223-7280
(334) 223-7135 Fax
matthew.shepherd@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA    )
    )
v.    )    CR. NO.02:07cr286-MHT-CSC
    )
JOSEPH SCOTT HOLCOMB    )

CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2008, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to

Christine Freeman, Esq, attorney for the defendant.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Matthew W. Shepherd
MATTHEW W. SHEPHERD
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
(334) 223-7280
(334) 223-7135 Fax
matthew.shepherd@usdoj.gov

14