IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| V. | ) CASE NO: 02:07-CR-286-MHT-CSC |
| | ) |
| JOSEPH SCOTT HOLCOMB | ) |

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF**
**MOTIONS TO SUPPRESS**

At the hearing on Defendant's Motion to Suppress, this Court directed the parties to file supplemental briefs on the question of whether or not reasonable suspicion existed to conduct an investigatory stop of Mr. Holcomb on May 31, 2007, based on the assumptions that the defendant's headlights were off, it was late at night, and the stop occurred in a drug activity area.

". . . (B)efore an officer may detain a person, he must have a reasonable suspicion grounded in specific and articulable facts, that the person has or is about to commit a crime. *See United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *see also Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1963). The facts must be judged against an objective standard of whether the facts available to the officer at the moment of the seizure or search would "warrant a man of reasonable caution in the belief" that the action taken was appropriate. *See Sokolow,* 490 U.S. at 7." *United States v. Brown*, 63 Fed. Appx. 655, 656  (4th Cir. 2003).

In a motion to suppress based on warrant-less conduct by police, the government has the burden of proof in establishing that the officers acted lawfully. *Coolidge v. New*

*Hampshire*, 403 U.S. 443 (1971) (burden of proving exception to warrant requirement); *Terry v. Ohio*, 392 U.S. 1 (1968) (burden of proving lawful basis for detention); *Florida v. Royer*, 460 U.S. 491, 500 (1983) (burden of proving detention did not exceed proper scope); *Beck v. Ohio,* 379 U.S. 89, 91 (1964) (burden of proving probable cause for warrantless arrest).

The "controlling burden of proof" at suppression hearings is "proof by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164 (1974). At a hearing on a motion to suppress, "the hearing requires a particular and close examination of the events leading up to the stop in question and **what the arresting officers knew** at the time of the stop. That information can only be obtained from the arresting officers. It exists nowhere else . . . ." *United States v. Salsedo*, 477 F.Supp. 1235, 1241 (D.C. Cal. 1979) (granting motion to suppress, to place case in procedural posture for government to appeal *Jencks* production order), vacated 662 F.2d 465 (upon apparent compliance with production order). "(I)n justifying the particular intrusion **the police officer** must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1 , 21 (1968). "This demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence." *Id.* at 21, n. 18.

Numerous reported and unreported cases cite the combination of headlights, late hour, and high crime area as a combination supporting raised suspicions by police officers.

However, cases in which the resulting stops by the officers are found to be based on reasonable suspicion and in compliance with the Fourth Amendment do not rely solely on those three factors. Instead, those factors combine with other, additional circumstances, which provide reasonable suspicion that the specific person stopped is committing or about to commit a specific crime. The additional circumstances particularize the officers' suspicions to the individual stopped and to specific criminal activity.

Moreover, in each case in which a combination of factors has been held to establish reasonable suspicion, in compliance with the Fourth Amendment, there was evidence as to the perceptions and actions of the **arresting** officer.

Thus, in *United States v. Cure*, 996 F.2d 1136 (11th Cir. 1993), the officer testified that he stopped the car in which Mr. Cure was a passenger because it was driving without its lights on and the car did not respond to the officer's signal to turn on its lights and, once the car was stopped, the officer saw a gun in plain view which turned out to be stolen. In *United States v. Smith*, 104 Fed.Appx. 266, 2004 WL 1778268 (3rd Cir. 2004), the evidence established that officers had probable cause to stop Smith's vehicle, where Smith was driving in a high crime area, at 2:00 a.m., without headlights, and with an expired registration. In *United States v. Brown*, 63 Fed. Appx. 655, 2003 WL 1930372 (4th Cir. 2003), the officer had probable cause to stop defendants in a rental car parked in a drive way in a high crime area late at night with its headlights off, where the car had also made elusive movements, its occupants had avoided eye contact with the officer, and the occupants had remained in the

parked car for "quite some time" but exited at the officer's approach, and ignored repeated commands to return. In *United States v. Jensen*, 41 Fed. Appx. 346, 2002 WL 1056979 (10th Cir. 2002), the officer had cause to stop the defendant where the defendant drove his truck in a high crime neighborhood, at 3 a.m., <u>and</u> approached a known drug and gang flophouse, fled upon seeing the police, and accelerated despite requests from officer that he stop.

In *Columbus v. Dials*, 2005 WL 3160887 (Ohio App., November 29, 2005), police officer Ward "observed appellant driving westbound on Livingston Avenue in Columbus, Ohio without illuminating his headlights. . . . The area in which Ward observed the vehicle is known by the police to be a high crime area" <u>and</u>, in response to Officer Ward's attempt to draw the driver's attention to his headlights, the appellant accelerated and wove around other vehicles. When the car was stopped, the appellant was belligerent, smelled of alcohol, and refused to perform field sobriety tests.[1]

In *Commonwealth v. Thompson*, 696 N.E. 2d 105 (Mass. 1998), the car approached by the officers had its lights off, its engine running <u>and</u> was parked in front of a townhouse that was the subject of a drug investigation.

In contrast, in *Davis v. State*, 74 S.W.3d 671 (Ark. App. 2002), the officers merely saw two men standing next to each other in a high crime area. The officers did not observe any criminal activity, nor did they observe a suspicious transaction. The officers attempted to justify their actions in detaining the men by facts which later became known, such as

---

[1] At the suppression hearing, Officer Ward testified and "was asked to explain his thought process." Id. at 2.

fidgety behavior by the defendant in response to the officers' approach. However, the court ruled that such after the fact justifications were not relevant to the determination of whether the initial stop was reasonable at the time the officers decided that a stop was warranted. The court granted the motion to suppress.

When the police initiate a search and seizure, the government bears the burden of establishing by a preponderance of the evidence that the search or seizure did not violate the Fourth Amendment, because "(t)he facts allegedly constituting the reasonable suspicion are peculiarly within the knowledge and control of the police." *United States v. Longmire,* 761 F.2d 411, 417 (7th Cir.1985). In the present case, the government has presented no evidence as to the perceptions and actions of Deputy McKinnen, the arresting officer. Instead, the perceptions of Deputy Birtley, which are disputed, represent little more than after the fact justifications.

It might be argued that in *Whren v. United States*, 517 U.S. 806 (1996), the Supreme Court held that probable cause exists to support the temporary detention of a motorist if there is evidence that a traffic law was violated, without regard to individual motive of the officer involved or general police practices in enforcing the particular traffic provision involved. 517 U.S. at 810. However, in *Whren*, the parties did not dispute that a traffic law had been violated, but simply litigated the role general police practices should have in the reasonable suspicion determination.

The requirement that the arresting/detaining officer have reasonable suspicion of

5

criminal activity requires analysis of the perceptions of the individual officer. That officer must have more than a hunch, and must reach at least "some minimal level of objective justification," taken from the totality of the circumstances, of possible specific criminal activity. *United States v. Sokolow,* 490 U.S. 1, 7-8 (1989) (quoting *I.N.S. v. Delgado,* 466 U.S. 210, 217(1984)).

Without additional factors justifying suspicion and proof as to the perceptions and objective justifications of Deputy McKinnen, the stop of Mr. Holcomb does not meet the criteria for a *Terry* stop. Any alleged consent given during the stop is further tainted by the illegality of the detention. Thus, any items seized or statements acquired must be suppressed.

                Respectfully submitted,

                **s/Christine A. Freeman**
                **CHRISTINE A. FREEMAN**
                **TN BAR NO.: 11892**
                Federal Defenders
                Middle District of Alabama
                201 Monroe Street, Suite 407
                Montgomery, AL 36104
                TEL: (334) 834-2099
                FAX: (334) 834-0353
                E-Mail: Christine_Freeman@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Matthew Shepherd, Assistant United States Attorney, 131 Clayton Street, Montgomery, AL.

        s/Christine A. Freeman
        **CHRISTINE A. FREEMAN**
        **TN BAR NO.: 11892**
        Federal Defenders
        Middle District of Alabama
        201 Monroe Street, Suite 407
        Montgomery, AL 36104
        TEL: (334) 834-2099
        FAX: (334) 834-0353
        E-Mail: Christine_Freeman@fd.org