IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR. NO. 2:07cr286-MHT |
| | ) | (WO) |
| JOSEPH SCOTT HOLCOMB | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The defendant, Joseph Scott Holcomb, ("Holcomb"), was charged on November 16, 2007, in a two-count indictment with, as an unlawful user of or person addicted to a controlled substance, being in possession of a firearm in violation of 18 U.S.C. § 922(g)(3) and misdemeanor possession of marijuana in violation of 21 U.S.C. § 844(a). On January 10, 2008, Holcomb filed a motion to suppress all physical items seized, statements made, and other "fruits" obtained as a result of a police stop and search of the truck driven by him on May 31, 2007, on South Pollard Street in Fort Deposit, Alabama, in the Middle District of Alabama.[1]  (Doc. # 11 at 1).  Claiming that the stop, seizure and subsequent search of his vehicle were unsupported by probable cause or reasonable suspicion, Holcomb contends that all evidence seized and statements made should be suppressed as violative of the Fourth Amendment to the United States Constitution.  Holcomb also contends that he was interrogated without being advised of his *Miranda*[2] rights, and thus, any statements he made while in custody are due to be suppressed.

---

[1] On February 21, 2008, the defendant filed a supplemental motion to suppress, alleging additional grounds.  (Doc. # 23).

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

On February 19, 2008, the Court held an evidentiary hearing on the motion to suppress, as supplemented.  For the reasons which follow, the Court concludes that the motion to suppress is due to be denied.

### FACTS

At approximately 11:30 p.m. on May 31, 2007, Lowndes County Sheriff Deputies Charlie McKinnon and Thomas Birtley were on patrol in a marked sheriff's cruiser in Fort Deposit, Alabama.[3]  While patrolling East Rogers Street, the officers observed two vehicles parked at the intersection of Pollard and Rogers streets.[4]  According to Deputy Birtley, one of the vehicles had its headlights on while the other vehicle, a pick-up truck, did not.  Although the parties disagree about the exact positioning of the vehicles, it is undisputed that the vehicles were parked next to each other on a public thoroughfare.[5]

Deputy Birtley testified that the vehicles were stopped in a known drug trafficking area.  As the officers passed, the pick-up truck drove away without turning on its headlights.  McKinnon turned the patrol car around, pulled in behind the truck and began a traffic stop.  Deputy Birtley approached the truck and recognized the defendant.[6]  As Birtley approached

---

[3]  Birtley has been in law enforcement since 1998.

[4]  The vehicles were parked just past the stop sign at the intersection.

[5]  The defendant argues that his vehicle was not in the road, but rather parked in an empty lot beside the road.  The court need not determine exactly where Holcomb was parked because the defendant concedes, and the evidence was clear, that at least one of the vehicles was blocking the road. *See* Motion to Suppress, Doc. # 11 at 2 ("Another truck driven by Mr. Holcomb's acquaintance Phillip Norris, pulled beside Mr. Holcomb's vehicle. Mr. Norris' truck blocked the remaining right lane that Mr. Holcomb's vehicle occupied and crossed over the center lane into the left lane."

[6]  Birtley testified that he recognized the defendant from a prior traffic stop two or three months earlier.  During the earlier traffic stop, which began because the officers suspected Holcomb was driving

the truck, through the window, he saw a rifle on the front seat of the truck. Birtley asked Holcomb if the gun was loaded; it was. Birtley then asked Holcomb to step out of the truck and asked for consent to search the truck. McKinnon took Holcomb's license and was walking back to the patrol car. According to Birtley, he again asked Holcomb "if he had a problem with me searching the vehicle, and he said, "No, I don't."[7] (Tr. Suppression Hrg. at 17).

At that point, Birtley searched the vehicle and found marijuana and a deer horn smoking pipe.[8] When Birtley found the marijuana, he and McKinnon decided to call Agent Campbell with the Drug Task Force. During the traffic stop,[9] McKinnon issued Holcomb a traffic citation for violating ALA. CODE § 32-5A-136 (1975), stopping, standing or parking outside of business or residence districts.[10] The citation reflects that Holcomb was "parked

---

under the influence, Birtley smelled marijuana. At that time, Holcomb consented to a search of his vehicle. Marijuana, drug paraphernalia and a rifle were found during that search.

[7] On cross-examination, Birtley testified that he asked Holcomb for consent to search the second time so that McKinnon would hear him ask for consent.

[8] The officers also discovered a Xanax tablet in the pill bottle containing the marijuana.

[9] Although the ticket indicates that the offense occurred at approximately 11:40 p.m., no evidence was presented at the evidentiary hearing as to when McKinnon wrote the ticket or gave it to Holcomb. At best, the evidence demonstrated that McKinnon issued the citation to Holcomb.

[10] ALA. CODE § 32-5A-136 (1975) provides, in pertinent part, as follows:

(a) Outside a business or residence district no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park or so leave such a vehicle off the roadway, but in any event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of 200 feet in each direction upon such a highway.

in the roadway."

During the evidentiary hearing, Phillip Norris, the driver of the other vehicle and a long time friend of Holcomb's, testified that the stop occurred at around 9:00 p.m. and that Holcomb's lights were on, particularly when Holcomb drove away. Because Norris' testimony contradicts Birtley's, it is necessary for the court to make findings of fact. In making its credibility determination, the court recognizes that it is improper to determine credibility based on the "status" of a witness. *United States v. Ramirez-Chilel,* 289 F.3d 744, 749 (11th Cir. 2002). Thus, Birtley's status as a police officer is not determinative. Rather, the court must weigh the testimony of these two witnesses in light of all the facts, taking into account their interests, the consistencies or inconsistencies in their testimonies, and their demeanors on the stand. *Gallego v. United States*, 174 F.3d 1196, 1198 (11th Cir. 1999).

Norris testified that he has been friends with Holcomb for fifteen to twenty years. His interest in the outcome of this case, on behalf of his friend, militates against his veracity in this regard. The court has carefully considered the demeanor of Norris during his testimony and concludes that Norris was mistaken about the time of the traffic stop and whether Holcomb's headlights were on when he drove away. First, with respect to the time of the stop, both Birtley and Agent Campbell testified that the time of the stop was around 11:30 p.m. The ticket records the time as 11:40 p.m. In his written statement, signed under penalty of perjury on June 13, 2007, less than two weeks after the traffic stop, Holcomb states the traffic stop took place "at about 11:40 p.m." (Evid. Hr'g Tr., Gov't Ex. 5). Thus, the court

4

finds that the traffic stop occurred at approximately 11:30 p.m. Furthermore, the court concludes that Norris was mistaken when he testified that Holcomb's lights were on when Holcomb drove away. Birtley testified that Holcomb's lights were off while he was parked and when he pulled away. The court finds that Holcomb's headlights were off.

## DISCUSSION

### A. Validity of Traffic Stop

The Fourth Amendment protects individuals from "unreasonable searches and seizures" by government officials, and its protections extend to "brief investigatory stops of persons or vehicles." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Absent probable cause, law enforcement officials may briefly detain a person as part of an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1220 (11th Cir. 1993). *See United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) ("Because a routine traffic stop is only a limited form or seizure, it is more analogous to an investigative detention than a custodial arrest. . . . Therefore, we analyze the legality of these stops under the standard articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).") (citations in original omitted).

For brief investigatory stops, the Fourth Amendment is satisfied "when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Gordon*,

231 F.3d 750, 754 (11th Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).[11]

When determining whether reasonable suspicion exists, courts must consider the totality of

the circumstances to determine whether the police officer had a "particularized and objective

basis" for suspected legal wrongdoing. *Arvizu*, 534 U.S. at 273 (citation omitted). In so

doing, "the reviewing court must give due weight to the police officer's experience." *United

States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1991). The reasonable suspicion required

for a *Terry* stop is more than a hunch, and considering the totality of the circumstances, must

be supported by some minimal level of objective justification that the person engaged in

unlawful conduct. *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989)*; Diaz-Lizaraza,* 981

F.2d at 1221.

    The officers conducted the traffic stop based on their observation that two vehicles

were parked in the roadway, late at night, in an area known for illicit drug activity. Officer

Birtley testified that the manner in which the vehicles were parked side by side in the road,

with one vehicle with his headlights off was not only dangerous but also suspicious. Birtley

testified that the manner in which one vehicle left, without turning on its headlights, after the

patrol car passed added to his suspicion. These facts were sufficient to give rise to a

reasonable suspicion that the driver of the vehicle may have engaged in criminal activity.

---

[11] To the extent that the defendant argues that he was targeted and the traffic stop was merely pretextual, he is entitled to no relief. The intent of the officer, actual or theoretical, is irrelevant to the determination of whether the traffic stop was valid. *See United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997). Furthermore, as the Supreme Court has said, "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). Consequently, the officer's subjective intent is not dispositive.

Based on the objective facts, the court concludes that the initial stop of the vehicle was not in violation of the Fourth Amendment.

The defendant makes much of the fact that he was not parked in the roadway, and thus, he did not violate the state statute for which he was charged in the citation. Holcomb argues that he "was not in violation of the traffic code prohibition of "parked in the roadway.""[12] (Doc. # 11 at 8). Relying on *United States v. King*, 244 F. 3d 736, 738 (9th Cir. 2001) and *United States v. Twilley*, 222 F. 3d 1092, 1094 (9th Cir. 2000), Holcomb argues that the officers' suspicion was based on a mistake of law and, therefore, cannot be reasonable suspicion necessary for a valid traffic stop. This argument misses the mark because the stop was not based on the cited violation of the Alabama traffic laws. Officer Birtley explained his actions at the hearing.

> All I can testify to is we've had many complaints of people saying y'all need to patrol Pollard Street and Rogers Street. There's a lot of traffic down there. People stopping, doing dealing drug deals and stuff like this. And as we pass them, the first thing that comes to my mind was why are they parked at the intersection? One of them has their headlights off. I mean to me, that's suspicious activity.

(Tr. Hr'g at 11)

The evidence shows that the stop of the defendant's vehicle was based on reasonable

---

[12]According to Norris, he and Holcomb were parked side by side on Pollard Street. Holcomb was parked on a concrete pad next to the road. Norris conceded that there was not a curb delineating the road from the concrete pad. (Evid. Hr'g Tr. at 105). Moreover, Norris admitted that he was parked in the right lane of traffic. "Scott was setting on the concrete pad, mostly on the concrete pad, and I was sitting on the road talking to him." (*Id.* at 106). Birtley testified that Holcomb's truck was parked in the street at the intersection late at night. The truck was not safely visible to other traffic because it was blocking traffic and there was no room to get around it. Moreover, Holcomb was not parked directly in front of a business. According to Birtley, these facts were sufficient to establish reasonable suspicion that Holcomb had violated Alabama law prohibiting parking in the roadway.

7

suspicion of criminal activity, not a violation of the traffic laws. Thus, the defendant's argument about mistake of law are premised on a mistake of the facts, and the arguments fail.

The defendant also challenges the legitimacy of the traffic stop because Ala. Code § 32-5A-136, the statute upon which the officers cited him, is unconstitutional and thus, could not provide reasonable suspicion to stop him.    The court need not resolve this issue because, even if the court were to assume that the statute was unconstitutional, "[t]he subsequently determined invalidity of the . . . ordinance on vagueness grounds does not undermine the validity of the arrest made for violation of that ordinance." *Michigan v. DeFillippo*, 443 U.S. 31, 40 (1979). *See also Illinois v. Krull,* 480 U.S. 340, 349 (1987) ("If a statute is subsequently declared unconstitutional, excluding evidence pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written."); *Holifield v. Davis*, 662 F.2d 710, 711 (11th Cir. 1981). In *DeFillippo*, the Court concluded that a police officer should not have to "anticipate that a court would later hold the ordinance unconstitutional." 443 U.S. at 37-38. Thus, even if the stop had been premised on the traffic statute, it's unconstitutionality would not vitiate the legitimacy of the stop.

## B. Scope and Duration of the Traffic Stop

Next, Holcomb asserts that the scope and duration of the traffic stop were unreasonable and unrelated to the traffic stop. "Mr. Holcomb was stopped for a minor traffic violation, removed from his vehicle and illegally detained by the officer's improper questioning regarding matters unrelated to the alleged violation." (Doc. # 11 at 9).

8

When Birtley approached the truck, he saw, in plain view, the rifle on the front seat of the truck. At that time, Birtley asked Holcomb if the gun was loaded, and asked Holcomb to step out of the truck. Birtley then asked Holcomb for consent to search the truck. The undisputed facts evince that Birtley asked Holcomb for permission to search as McKinnon was walking back to the patrol car to verify Holcomb's license, and prior to McKinnon giving Holcomb the traffic citation. After Birtley and McKinnon lawfully detained Holcomb and the vehicle, McKinnon and Birtley were entitled to check driver's license, registration and insurance information "including questioning the driver about the traffic violation, requesting consent to search the vehicle *and* running a computer check for outstanding warrants." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) (emphasis in original).

Moreover, after lawfully stopping the defendant and the vehicle, Birtley and McKinnon were entitled to "take reasonable actions, based upon the circumstances, to protect themselves during investigative detentions." *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989*)*.

> It is well established that officers conducting a traffic stop may "take such steps as [are] reasonably necessary to protect their personal safety." *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 331 (1985). This includes conducting a protective search of the driver, *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 112, 98 S.Ct. 330, 54 L.Ed.2d 331 (177), the passengers, *id*., and the vehicle, *Michigan v. Long*, 463 U.S. 1032, 1049-51, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). The officer may seize any contraband, including weapons, in plain view. *Id*. at 1049, 103 S.Ct. 3469. The officer may use a flash light to illuminate a vehicle's dark interior. *United States v. Dunn*, 480 U.S. 294, 305, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). The officer may also prolong the detention to investigate the driver's license

and the vehicle registration, *[Delaware v.] Prouse,* 440 U.S. 648, 657-59, 99 S.Ct. 1391 [1979], and may do so by requesting a computer check. *United States v. Simmons,* 172 F.3d 775, 778 (11th Cir. 1999); *Pruitt,* 174 F.3d at 1219.

*Purcell*, 236 F.3d at 1277-78.

Upon approaching the truck, Birtley saw the rifle on the front seat. Birtley's request to Holcomb that he get out of the vehicle does not render his actions unlawful. *Pennsylvania v. Mimms,* 434 U.S. 106 (1977).[13] It is correct that the police can be said to have seized an individual if, in view of all the surrounding circumstances, a reasonable person would believe that he was not free to leave. *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). However, a *Terry* investigatory stop is not an arrest merely because a reasonable person would not feel free to leave. *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995). If every seizure were an arrest, *Terry* would be rendered meaningless. The mere fact that Birtley asked Holcomb to step out of his truck does not transform the investigatory stop into an arrest. *Id.*, at 1576; *Hastamorir*, 881 F.2d at 1556; *United States v. Kapperman*, 764 F.2d 786, 791 (11th Cir. 1985).

To the extent that Holcomb argues Birtley should not have asked any questions not

---

[13] In *Pennsylvania v. Mimms*, 434 U.S. 106 (1997), an officer directed a motorist stopped for a minor traffic violation to get out of his car, even though the officer had no reason to believe the motorist was dangerous or armed. The Court held that concern for the officer's safety outweighed the slight intrusion against the liberty of the motorist. *Mimms,* 434 U.S. at 110-11. It was reasonable therefore in this case for the officer to detain the defendant "in order to determine his identity or to maintain the status quo momentarily while obtaining more information . . . in light of the facts known him at the time." *Kapperman*, 764 F.2d at 791-92

pertinent to the traffic stop, he is entitled to no relief.[14]   "Mere questioning . . . is neither a

search nor a seizure."  *Purcell*, 236 F.3d at 1279.

> Law enforcement officers do not violate the Fourth Amendment's prohibition
> of unreasonable seizures merely by approaching individuals on the street or in
> other public places and putting questions to them if they are willing to listen.
> . . . Even when law enforcement officers have no basis for suspecting a
> particular individual, they may pose questions, ask for identification, and
> request consent to search luggage – provided they doe not induce cooperation
> by coercive means.

*United States v. Drayton*, 536 U.S. 194, 201-02 (2002).  *See also, United States v. Baker,* 290

F.3d 1276 (11th Cir. 2002).    "Typically, . . . the officer may ask the detainee [of a traffic stop]

a moderate number of questions to determine his identity and to try to obtain information

confirming or dispelling the officer's suspicions.   But the detainee is not obligated to

respond."  *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984).

"An officer conducting a routine traffic stop may request consent to search the

vehicle."  *Purcell*, 236 F.3d at 1281.  The unrebutted evidence demonstrates that Holcomb

gave Birtley consent to search  during the traffic stop, and prior to receiving the traffic ticket

from McKinnon.  At that juncture, Holcomb's consent fundamentally altered the nature of

---

[14] Holcomb's argument that Birtley should not have asked him whether he had any drugs or weapons in the truck nor should he asked for consent to the search during the traffic stop because he was "in custody" and had not been given *Miranda* warnings borders on the ridiculous. The "Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during 'custodial interrogation' without a prior warning." *Illinois v. Perkins*, 496 U.S. 292, 296 (1990).  The Supreme Court has specifically rejected the defendant's argument that the stop of his truck "rendered him 'in custody'" for the purpose of *Miranda*. *See Berkemer v. McCarty*, 468 U.S. 420, 441 (1984) (Officer not required to give *Miranda* warnings to a motorist until the motorist was placed under arrest.)  The evidence clearly demonstrated that Holcomb was not in custody when he responded to Birtley's questions about whether there were weapons or drugs in the truck, and whether Holcomb would consent to a search.  Consequently, his Fifth Amendment claim lacks merits.

the encounter – from a traffic stop to a consensual encounter.  Consequently, for the reasons as stated, the court concludes that the investigatory stop was reasonable under the circumstances and while the defendant was undisputedly detained, he was not under arrest.

### C.  Search Subsequent to Traffic Stop

In his motion to suppress, Holcomb argues that he did not consent to the search of his truck.  At the evidentiary hearing on the motion, the evidence clearly demonstrated and the court finds that Birtley asked Holcomb for permission to search the truck, and Holcomb twice consented to a search.  "A consensual search is constitutional if it is voluntary; if it is the product of an "essentially free and unconstrained choice."" *Purcell,* 236 F.3d at 1281. *See also United States v. Acosta*, 363 F.3d 1141, 1151 (11th Cir. 2004).  Thereafter, Birtley began to search the vehicle and discovered in the center console, marijuana, a Xanax tablet and a deer horn smoking pipe.  "A consensual search is manifestly reasonable so long as it remains within the scope of the consent."  *United States v. Martinez*, 949 F.2d 1117, 1119 (11th Cir. 1992).  The court concludes that Holcomb's consent to search, incident to a lawful traffic stop, were voluntary and not the product of any force or coercion.  *See generally United States v. Desir*, 257 F.3d 1233, 1236 (11th Cir. 2001).

### CONCLUSION

For the reasons as stated, the court finds that the defendant's constitutional rights were not violated, and  it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be DENIED. It is further

ORDERED that the parties shall file any objections to the said Recommendation on

or before **May 12, 2008.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 28th day of April, 2008.


       /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE